a

No JS-6

FILED
CLERK, U.S. DISTRICT COURT

OCT 15 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                                    DEPUTY

1   BRIGGS LAW CORPORATION [FILE: 1248.10]
    Cory J. Briggs (State Bar no. 176284)
2   E-mail: service@briggslawcorp.com
    99 East "C" Street, Suite 111
3   Upland, CA 91786
    Telephone: 909-949-7115
4   Facsimile: 909-949-7121

5   LAWYERS FOR CLEAN WATER, INC.
    Daniel G. Cooper (State Bar no. 153576)
6   E-mail: cleanwater@sfo.com
    Layne Friedrich (State Bar no. 195431)
7   Martin McCarthy (State Bar no. 194915)
    1004-A O'Reilly Avenue
8   San Francisco, CA 94129
    Telephone: 415-440-6520
9   Facsimile: 415-440-4155

10  Attorneys for Plaintiff Inland Empire Waterkeeper,
      a chapter of Orange County Coastkeeper

11

12

13                  UNITED STATES DISTRICT COURT

14                 CENTRAL DISTRICT OF CALIFORNIA

15  INLAND EMPIRE WATERKEEPER,    )
    a chapter of ORANGE COUNTY    )   CASE NO. EDCV 07-00475DDP(FMOx)
16  COASTKEEPER, a non-profit     )
    corporation,                  )   **CONSENT DECREE AND**
17                                )   **DISMISSAL**
              Plaintiff,          )
18                                )
        vs.                       )
19                                )
    FRONTIER ALUMINUM             )
20  CORPORATION, a California     )
    corporation,                  )
21                                )
              Defendant.          )
22  _____)

23

24

25        This Consent Decree and Dismissal ("Consent Decree") is being made on June

26  9, 2008 ("Execution Date"), by and between Plaintiff Inland Empire Waterkeeper, a

27  chapter of Orange County Coastkeeper ("Waterkeeper"), on the one hand; and

28  Defendant Frontier Aluminum Corporation ("Frontier"), on the other hand.

The Parties are entering into this Consent Decree to achieve a full and final settlement of Waterkeeper's claims against Frontier in this proceeding. (Throughout this Consent Decree, Waterkeeper and Frontier are collectively identified as the "Parties.")

## I. BACKGROUND RECITALS

1.01.   Waterkeeper is a California non-profit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of the Inland Empire and Orange County.

1.02.   Frontier is a California corporation engaged in the business of manufacturing aluminum extrusions in the City of Corona, California.

1.03. Pursuant to the Federal Water Pollution Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1251 *et seq.*, and Chapter 13.08 of the Corona Municipal Code (the "Ordinance"), the City of Corona has issued a pretreatment permit ("Pretreatment Permit") to Frontier to regulate its discharges of wastewater from its facility located at 2480 Railroad Street in Corona, California ("Frontier's Facility"), into the municipality's publicly owned treatment works ("POTW").

1.04.   On April 23, 2007, Waterkeeper commenced this proceeding against Frontier ("Civil Action"). In general terms, Waterkeeper's complaint alleges that Frontier has violated the terms of its Pretreatment Permit, the Ordinance, and the categorical pretreatment regulations set forth at Subchapter N of Chapter 1 of Title 40 of the Code of Federal Regulations, and thereby violated the Clean Water Act. Frontier filed an answer to Waterkeeper's complaint. In general terms, Frontier's answer denies all the material allegations in the complaint.

1.05.   The Parties desire to settle the Civil Action once and for all in order to avoid the expense, delay, and uncertainty of litigation and without admitting any liability. The specific terms and conditions of this Consent Decree, as set forth in detail below, are intended to satisfy Waterkeeper's and Frontier's respective desires.

## II. JURISDICTIONAL PROVISIONS

2.01. <u>Jurisdiction</u>. The Court has jurisdiction over the Civil Action for the purposes of enforcement of this Consent Decree pursuant to Section 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and pursuant to Section 1331 of Title 28 of the U.S. Code.

2.02. <u>Standing</u>. Waterkeeper has standing under Article III of the U.S. Constitution to seek enforcement by the Court of the terms and conditions of this Consent Decree. Frontier waives all objections to Waterkeeper's standing with respect to this Consent Decree.

2.03. <u>Venue</u>. Venue is proper in the Central District of California.

## III. COMPLIANCE AND OVERSIGHT PROVISIONS

3.01. <u>Compliance with Applicable Wastewater Discharge Standards</u>. Beginning on the Effective Date (defined below) and for as long as this Consent Decree is in effect ("Compliance Period"), Frontier shall comply with any and all Applicable Wastewater Discharge Standards under the Clean Water Act. As used in this Consent Decree, the term "Applicable Wastewater Discharge Standard" includes any quantitative limitation on wastewater discharges to the POTW applicable to Frontier at Frontier's Facility as set forth in (*i*) Chapter 13.08 of the Corona Municipal Code (as amended from time to time), including each and every Pretreatment Permit issued thereunder to Frontier; (*ii*) the Porter-Cologne Water Quality Control Act (as amended from time to time); and (*iii*) Subchapters D and N of Chapter I of Title 40 of the Code of Federal Regulations (as amended from time to time). However, the term "Applicable Wastewater Discharge Standard" excludes any standard governing wastewater discharges in any agreement between Frontier and the City of Corona that is not incorporated directly into the Pretreatment Permit or that is less stringent than the wastewater discharge standards set forth in Chapter 13.08 of the Corona

1  Municipal Code or Subchapter N of Chapter 1 of Title 40 of the Code of Federal
2  Regulations.

3      3.02. Violation of an Applicable Wastewater Discharge Standard. Except as
4  otherwise provided in Paragraphs 3.06 and 3.07, a "Violation" shall have occurred
5  if the result of any laboratory analysis conducted by or at the direction of Frontier
6  indicates for a given wastewater discharge that Frontier has failed to meet any
7  Applicable Wastewater Discharge Standard during the Compliance Period.  The
8  parties agree that Frontier shall be deemed a "batch" discharger, meaning that a
9  Violation consisting of Frontier's failure to meet more than one Applicable
10 Wastewater Discharge Standards for effluent in any 24-hour period shall be deemed
11 a single Violation for that period.

12     3.03. Payments for Violation of Applicable Wastewater Discharge Standards.
13 Each Violation shall constitute a separate occurrence of a Violation of this Consent
14 Decree. Thus, for example, a concurrent discharge into the POTW of three regulated
15 contaminants in excess of permitted levels would constitute three occurrences of a
16 Violation.  All Payments shall be calculated as a percentage of the "Maximum
17 Payment." For purposes of this Consent Decree, the "Maximum Payment" shall be
18 equal to the maximum civil judicial penalty authorized under Section 1319(d) of Title
19 33 of the U.S. Code and under Part 19 of Title 40 of the Code of Federal Regulations
20 (as amended from time to time) at the time the Violation occurs; currently, the
21 maximum civil judicial penalty is $32,500.00. For the first occurrence of a Violation
22 of any Applicable Wastewater Discharge Standard during the Compliance Period,
23 Frontier shall make a one-time payment equal to one-fourth (25%) of the Maximum
24 Payment. For the second occurrence of a Violation during the Compliance Period,
25 Frontier shall make a one-time payment equal to one-half (50%) of the Maximum
26 Payment. For the third occurrence of a Violation during the Compliance Period,
27 Frontier shall make a one-time payment equal to three-fourths (75%) of the Maximum
28 Payment. For the fourth occurrence of a Violation and every subsequent Violation

1   during the Compliance Period, Frontier shall make a one-time payment equal to the
2   Maximum Payment (100%). Each payment shall be paid to the supplemental
3   environmental project described in Article V below. Except as otherwise provided
4   in Paragraphs 3.06 and 3.07, payment shall be made not more than 15 days after
5   Frontier receives notice from the laboratory of the Violation. Waterkeeper shall be
6   given prompt notice of any Violation and of any payment for a Violation.

7       3.04. Enforcement Following Third Violation: At any time following Frontier's
8   third Violation under this Consent Decree, Waterkeeper may invoke the dispute-
9   resolution provisions of Article VI below. Waterkeeper may seek any and all relief
10  authorized by law, including but not limited to injunctive relief, declaratory relief,
11  damages for harm to the environment, civil monetary penalties, and contempt
12  sanctions to redress past violations and to prevent future violations of this Consent
13  Decree.

14      3.05. Reports. For the duration of the Compliance Period, Frontier shall
15  provide Waterkeeper with complete copies of all documents pertaining to Frontier's
16  wastewater discharges (including but not limited to monitoring reports) that are
17  submitted to the U.S. Environmental Protection Agency, the State Water Resources
18  Control Board, the Regional Water Quality Control Board for the Santa Ana Region,
19  the City of Corona, or any other public agency. Such copies shall be provided to
20  Waterkeeper at the same time that the documents are submitted to the agency.
21  Frontier shall ensure that all information contained in the documents is accurate to the
22  best of Frontier's knowledge.

23      3.06. Conclusiveness of Laboratory Analyses and Monitoring Data. If the result
24  of any laboratory analysis conducted by or at the direction of Frontier indicates for
25  a given wastewater discharge sample that there has been a Violation of an Applicable
26  Wastewater Discharge Standard during the Compliance Period, the result shall be
27  conclusive evidence of a Violation unless (i) not more than fourteen days after
28  receiving the result, Frontier notifies Waterkeeper in writing that Frontier believes the

1 | result to have been caused by an error in the collection, shipment, handling, or
2 | analysis of the sample; (*ii*) the result of a different laboratory's analysis of a second
3 | Contemporaneous Sample (defined below) indicates that there was no Violation; and
4 | (*iii*) Frontier collects and preserves a sufficient quantity of a third Contemporaneous
5 | Sample to be analyzed upon Waterkeeper's request if Waterkeeper and Frontier
6 | disagree regarding the laboratory result finding a Violation. Frontier's notification
7 | shall state the reasons why a result was believed to be erroneous and shall include
8 | copies of the result believed to be erroneous, the different laboratory's result
9 | indicating the absence of a Violation, and any other evidence supporting Frontier's
10 | belief. Frontier's timely provision to Waterkeeper of a different laboratory's result
11 | showing the absence of a Violation shall temporarily suspend (effective as of the date
12 | of the discharge) Frontier's duty to make any applicable payment under Paragraph
13 | 3.03. If Waterkeeper does not agree with Frontier that the laboratory result finding
14 | a Violation was caused by an error in the collection, shipment, handling, or analysis
15 | of the sample, then Waterkeeper shall have up to thirty days from the date it receives
16 | Frontier's notification either (*i*) to inform Frontier in writing that it disagrees and
17 | request that the third Contemporaneous Sample be analyzed at a laboratory mutually
18 | agreeable to Frontier and Waterkeeper; or (*ii*) be deemed to have forever withdrawn
19 | its contention that there was a Violation. If Waterkeeper does not inform Frontier in
20 | writing that it disagrees and request that the third Contemporaneous Sample be
21 | analyzed within the thirty-day period, or if the laboratory analysis of the third
22 | Contemporaneous Sample confirms that there was no Violation, then the temporary
23 | payment suspension shall become permanent. Conversely, if the laboratory analysis
24 | of the third Contemporaneous Sample confirms that there was a Violation, then the
25 | applicable payment shall be reinstated. Nothing in this section 3.06 authorizes
26 | Frontier to rely on the collection or preservation of samples or the result of any
27 | laboratory analysis that was not performed in accordance with the Clean Water Act.
28 | As used in this paragraph, "Contemporaneous Sample" shall mean an additional

1    sample of the given wastewater discharge that was (*i*) gathered at the exact same time
2    as the sample indicated to have been in Violation of an Applicable Wastewater
3    Discharge Standard; (*ii*) preserved for analysis in accordance with the provisions of
4    the Clean Water Act; and (*iii*) analyzed in accordance with the provisions of the
5    Clean Water Act.
6         3.06.50  Calibration of Fluoride Monitor; Calculation of Fluoride Violations.
7    Frontier shall recalibrate its fluoride monitor at least monthly in accordance with the
8    manufacturer's most recent recalibration protocols for the monitor at the time of
9    recalibration.  So long as it does so, any discharge made in reliance on fluoride
10   monitoring results showing compliance with the Pretreatment shall not be a Violation.
11   If, however, on four or more occasions Frontier's monitoring results show compliance
12   with its fluoride discharge permit limits but the supervising governmental agency's
13   fluoride tests after discharge from Frontier's facility are inconsistent and suggest
14   possible non-compliance with said fluoride limits, then Waterkeeper shall have the
15   right to invoke alternative dispute resolution to determine whether said fourth or later
16   fluoride discharge event should be deemed a Violation and, if so, subject to penalties.
17   Waterkeeper shall provide written notice of its invocation of alternative dispute
18   resolution to Frontier within 2 days after said fourth or later discharge event with
19   monitoring results inconsistent with discharge sampling results by the supervising
20   agency.   Frontier shall have the right to establish the validity of its fluoride
21   monitoring data based on the results of any Contemporaneous Sample or other
22   reasonable evidence of the proper functioning of its fluoride monitor. A copy of the
23   protocols used by Frontier for the first recalibration and for each subsequent
24   recalibration subject to revised protocols shall be provided to Waterkeeper as part of
25   Frontier's compliance with Paragraph 3.05, along with Frontier's written certification
26   that such protocols are the most recent protocols published by the monitor's
27   manufacturer.
28

3.07. *Force Majeure*. Frontier is exempt from the requirement to make a payment under Paragraph 3.03 if a *force majeure* prevents Frontier's compliance with this Consent Decree. As used in this paragraph, *"force majeure"* means (*i*) an earthquake, wildfire, or other act of God; (*ii*) an act of war; (*iii*) other circumstances beyond Frontier's control that are not reasonably foreseeable and for which preventative measures cannot reasonably be taken by Frontier; or (*iv*) an upset as defined in Section 122.41(n) of Title 40 of the Code of Federal Regulations. In order to demonstrate that there is no Violation as the result of a *force majeure*, Frontier must, not more than fourteen days after receiving notice of a Violation (to the extent not prevented by the *force majeure*), notify Waterkeeper in writing that Frontier believes the Violation to have been caused by a *force majeure*. Frontier's notification shall identify the particular Violation believed to have been caused by a *force majeure* and shall include copies of the laboratory result and all other evidence supporting Frontier's belief. Frontier's timely submission to Waterkeeper of evidence that the Violation was caused by a *force majeure* shall temporarily suspend (effective as of the date of discharge) Frontier's duty to make any applicable payment under Paragraph 3.03. If Waterkeeper does not agree with Frontier that the violation was caused by a *force majeure*, then Waterkeeper shall have up to thirty days from the date it receives Frontier's notification to inform Frontier in writing that it disagrees and to invoke the dispute-resolution provisions of Article VI below, or be deemed to have forever withdrawn its contention that there was no *force majeure*. If Waterkeeper does not invoke the dispute-resolution provisions of Article VI within the thirty-day period, or if the dispute-resolution process results in a finding of the absence of a Violation, then the temporary payment suspension shall become permanent. Conversely, if the dispute-resolution process results in a finding of a Violation, then the applicable payment shall be reinstated, beginning for calculation purposes as of the date of the finding. For purposes of determining whether a particular discharge was caused by a *force majeure*, Frontier shall have the burden of

proving, by a preponderance of the evidence, that the discharge was in fact caused by a *force majeure*.

## IV. RELEASE AND DISMISSAL PROVISIONS

4.01. <u>Mutual Release</u>. Except for claims regarding a Party's failure to comply with any aspect of this Consent Decree, the Parties now release each other and their respective managers, members, officers, directors, shareholders, employees, agents, servants, and legal representatives from any and all claims under the Clean Water Act, the Porter-Cologne Water Quality Control Act, or Chapter 13.08 of the Corona Municipal Code, whether known or unknown, that were alleged or that could have been alleged in the Civil Action up through and including the Execution Date of this Consent Decree.

4.02. <u>Reservation of Public-Participation Rights</u>. Except to the extent of the release set forth in Paragraph 4.01, nothing in this Consent Decree prohibits, and nothing in it shall it be construed as prohibiting, Waterkeeper or Frontier from participating in or otherwise exercising any of their respective rights (*i*) under the Clean Water Act, the Porter-Cologne Water Quality Control Act, or any other legal authority; or (*ii*) in connection with any public proceeding pertaining to Frontier or its operations or wastewater discharges, including but not limited to formal or informal proceedings of the U.S. Environmental Protection Agency, the State Water Resources Control Board, the Regional Water Quality Control Board for the Santa Ana Region, or the City of Corona.

4.03. <u>Dismissal of Civil Action</u>. Provided that the Court retains jurisdiction over the Civil Action as requested below, the Civil Action shall be dismissed with prejudice upon the Court's approval of this Consent Decree.

## V. FINANCIAL PROVISIONS

5.01. Supplemental Environmental Project. Not more than 10 days after the Effective Date (defined below), Frontier shall cause a cashier's check in the amount of $65,000.00 to be issued to the Riverside-Corona Resource Conservation District (4500 Glennwood Drive, Building A, Riverside, CA 92501) for the purpose of funding a supplemental environmental project involving, in general terms, restoration of riparian habitat in the Temescal Creek watershed, which is itself within the Santa Ana River watershed. The recipient's willingness to accept the funds for such purpose has been confirmed in a letter issued to Waterkeeper and attached to this Consent Decree as Exhibit "A".

5.02. Reimbursement of Waterkeeper's Legal Expenses: Not more than 10 days after the Effective Date, Frontier shall cause a cashier's check in the amount of $65,000.00 to be issued to "Briggs Law Corporation Trust Account" on Waterkeeper's behalf for the purpose of reimbursing Waterkeeper for reasonable attorney fees, expert-witness fees, and other legal expenses incurred in connection with the Civil Action.

## VI. DISPUTE-RESOLUTION PROVISIONS

6.01. Informal Resolution of Disputes. If a dispute under this Consent Decree arises, or if either Party believes that a breach of this Consent Decree has occurred, the Parties shall meet and confer in good faith, either in person or via telephone, within 14 days of receiving written notification of a request for such meeting. During the meet-and-confer process, the Parties shall discuss the dispute and use their best efforts to resolve it informally. If either Party fails to meet and confer or if the meet-and-confer process does not resolve the dispute, then no sooner than 10 days later either Party may initiate the formal dispute-resolution process set forth in Paragraph 6.02. The Parties may, upon mutual written consent, extend the time to conduct or complete any aspect of the meet-and-confer process.

6.02. <u>Formal Resolution of Disputes</u>: For any dispute not resolved through the meet-and-confer process, the Parties' exclusive recourse shall be moving the Court for an order enforcing the terms and conditions of this Consent Decree and for such other relief as the Court deems appropriate ("Motion"). The Party filing the Motion may request expedited review of the Motion, and the non-filing Party shall join in any such request. If Judge Dean D. Pregerson is not available to rule on the Motion, it may be assigned to another judge pursuant to the Court's applicable rules.

6.03. <u>Legal Expenses</u>: The successful Party shall be entitled to recover all legal expenses incurred in connection with the Motion proceeding, including reasonable attorney fees and expert-witness fees, consistent with Section 505(d) of the Clean Water Act, 33 U.S. C. § 1365(d).

6.04. <u>Exclusivity of Dispute-Resolution Provisions</u>. The provisions of this Article set forth the exclusive judicial remedy available to the Parties in the event of any dispute pertaining to or any breach of this Consent Decree. Accordingly, no Party may initiate any judicial proceeding or pursue any judicial remedy within the scope of this Consent Decree except in accordance with the provisions of this Article.

## VII. GENERAL PROVISIONS

7.01. <u>Integration</u>: This Consent Decree constitutes and contains the entire agreement and understanding between the Parties concerning the subject matter of the Consent Decree. Unless otherwise expressly stated in this Consent Decree, it supersedes and replaces all prior negotiations and all agreements--whether proposed or accepted, written or oral--concerning its subject matter.

7.02. <u>Mutual Drafting, Use of Titles</u>: The Parties participated equally in negotiating and drafting this Consent Decree, and nothing in it shall be construed against any particular Party on the basis that this Consent Decree was drafted by that Party. Headings and titles are used throughout this Consent Decree solely for the convenience of the Parties and are not an integral part of it.

7.03. <u>Waiver, Remedy Selection</u>: No waiver of any breach of any term or condition of this Consent Decree shall be, nor shall it be construed to be, a waiver of any other breach of this Consent Decree, and no waiver shall be binding unless made in writing and signed by the Party waiving the breach. A Party's pursuit or enforcement of fewer than all available remedies in the event of any breach of this Consent Decree shall not preclude that Party from pursuing or enforcing other or all available remedies in the event of any other breach of this Consent Decree.

7.04. <u>Efficacy of Copy</u>: This Consent Decree may be executed in counterparts, and each executed counterpart shall have the efficacy of a signed original. Photographic duplications of executed counterparts may be used, in the absence of any genuine issue as to their authenticity, in lieu of originals for any purpose. Each Party's executing signature may be transmitted to the other electronically or via facsimile, and such signature shall have the same effect as an original signature.

7.05. <u>Advice of Counsel</u>: Each of the Parties has read this Consent Decree in its entirety and has had a reasonable opportunity to consult with counsel regarding the nature of this Consent Decree and the fairness and propriety of its terms and conditions. Each Party agrees to the terms and conditions of this Consent Decree knowingly and voluntarily.

7.06. <u>Legal Expenses</u>: Except as expressly provided elsewhere in this Consent Decree, the Parties shall each bear their respective attorney fees, expert-witness fees, and other legal expenses incurred in connection with the Civil Action and this Consent Decree.

7.07. <u>Authority to Bind</u>: Each person signing this Consent Decree represents that he or she has full authority to bind the Party on whose behalf the person signs.

7.08. <u>Persons/Entities Bound</u>: This Consent Decree shall be binding on and inure to the benefit of the Parties, jointly and severally, in every capacity whatsoever, and to their successors, assigns, managers, members, officers, directors, shareholders, employees, agents, servants, and legal representatives.

7.09. <u>Notices</u>: Any and all notices or other communications required or permitted by this Consent Decree or by law to be served on or given to any of the Parties shall, unless otherwise required by law, be in writing and be deemed duly served and given (*i*) when personally delivered to the Party to whom it is directed; or (*ii*) when deposited with the United States Postal Service and sent via certified mail (return receipt requested), first-class postage prepaid, fax, or email.  The following addresses shall be used for any and all notices:

For Waterkeeper

Executive Director
Inland Empire Waterkeeper
3741 Merced Drive, Unit F2
Riverside, CA 92503
Fax: (951) 689-6273
E-mail: garry@coastkeeper.org

*and*

Daniel Cooper
Lawyers for Clean Water
1004-A O'Reilly Avenue
San Francisco, CA 94129
Fax: (415) 440-4155
E-mail: cleanwater@sfo.com

*and*

Cory J. Briggs
Briggs Law Corporation
99 East "C" Street, Suite 111
Upland, CA 91786
Fax: (909) 949-7115
E-mail: service@briggslawcorp.com

For Frontier

Michael Rapport
Frontier Aluminum Corporation
2480 Railroad Street
Corona, CA 92880
Fax: (951) 735-1895
E-mail: m.rapport@frontier-Aluminum.com

*and*

Beth S. Dorris
Best, Best & Krieger LLP
300 South Grand Avenue, 25th Floor
Los Angeles, CA 90071
Fax: (213) 617-7480
E-mail: beth.dorris@bbklaw.com

1  However, any Party may change the address to which notices or other
2  communications are to be given under this Consent Decree by sending a notice of the
3  change to the other Party at its last address to have been designated under this
4  Consent Decree.

5      7.10. Agency Review. Waterkeeper shall submit this executed Consent Decree
6  to the U.S. Environmental Protection Agency and the U.S. Department of Justice for
7  the 45-day review-and-comment period prescribed by Section 135.3 of Title 40 of the
8  Code of Federal Regulations.

9      7.11. Court Approval. If for any reason the Court declines to approve this
10 Consent Decree in the form presented, the Parties shall work together to modify the
11 Consent Decree so that it is acceptable to the Court. If the Parties are unable to agree
12 upon modifications within 30 days, the disagreement shall be subject to the dispute-
13 resolution provisions set forth in Article VI above.

14     7.12. Effective Date. This Consent Decree shall take effect on the date that the
15 Court approves it following the 45-day review-and-comment period by the
16 Environmental Protection Agency and Department of Justice ("Effective Date"). All
17 obligations under this Consent Decree shall begin upon the Effective Date of this
18 Consent Decree except as otherwise stated in this Consent Decree.

19     7.13. Term. This Consent Decree shall be in effect for three years from the
20 Effective Date ("Term"). Frontier may move the Court to terminate this Consent
21 Decree if Frontier demonstrates that it has continuously complied with the
22 Pretreatment Permit, the Ordinance, and the Clean Water Act for two full years
23 commencing with the Effective Date of this Consent Decree. During the Term, the
24 Parties' exclusive recourse for resolving disputes between them regarding the terms
25 and conditions of or any Party's compliance with this Consent Decree shall be the
26 dispute-resolution provisions set forth in Article VI above.

27

28

7.14. <u>Modification of Consent Decree</u>.  This Consent Decree shall not be amended or otherwise modified except by a written agreement signed by a duly authorized representative of each Party and approved by the Court.

7.15. <u>Continuing Jurisdiction</u>. The Parties desire for and now request the Court to retain jurisdiction over the Civil Action to enforce the terms and conditions of this Consent Decree and to resolve any and all disputes arising under it.

We have read and agree to the foregoing in its entirety.

Dated: June ___, 2008.        INLAND EMPIRE WATERKEEPER, a
                              Chapter of ORANGE COUNTY
                              COASTKEEPER

                       By: _____
                           Garry Brown, Executive Director

Dated: June /9, 2008.         FRONTIER ALUMINUM CORPORATION

                       By: _____
                           Michael Rappon, President

Approved as to form:

Dated: June ___, 2008.        LAWYERS FOR CLEAN WATER, INC.
                              BRIGGS LAW CORPORATION

                       By: _____
                           Cory J. Briggs

                              Attorneys for Plaintiff Inland Empire
                              Waterkeeper, a chapter of Orange County
                              Coastkeeper

Dated: June 20, 2008.         BEST BEST & KRIEGER

                       By: _____
                           Beth S. Dorris

                              Attorneys for Defendant Frontier Aluminum
                              Corporation

1    7.14. Modification of Consent Decree. This Consent Decree shall not be
2 amended or otherwise modified except by a written agreement signed by a duly
3 authorized representative of each Party and approved by the Court.
4    7.15. Continuing Jurisdiction. The Parties desire for and now request the Court
5 to retain jurisdiction over the Civil Action to enforce the terms and conditions of this
6 Consent Decree and to resolve any and all disputes arising under it.
7    We have read and agree to the foregoing in its entirety.

8
9    Dated: June _13_, 2008.          INLAND EMPIRE WATERKEEPER, a
                                        Chapter of ORANGE COUNTY
10                                      COASTKEEPER
11                              By: _____
12                                  Gary Brown, Executive Director
13   Dated: June ___, 2008.          FRONTIER ALUMINUM CORPORATION
14
15                              By: _____
                                    Michael Rapport, President
16
17   Approved as to form:
18   Dated: June _13_, 2008.          LAWYERS FOR CLEAN WATER, INC.
                                        BRIGGS LAW CORPORATION
19
20                              By: _____
                                    Cory J. Briggs
21
22                                  Attorneys for Plaintiff Inland Empire
                                    Waterkeeper, a chapter of Orange County
23                                  Coastkeeper

24   Dated: June ___, 2008.          BEST BEST & KRIEGER
25
                                By: _____
26                                  Beth S. Dorris
27                                  Attorneys for Defendant Frontier Aluminum
                                    Corporation
28

                                   Page 15
                                   - - - - -
                          Consent Decree and Dismissal

# CONSENT DECREE AND DISMISSAL

Exhibit "A"



**RIVERSIDE-CORONA RESOURCE CONSERVATION DISTRICT**

8/4/08

Cory Briggs
Briggs Law Corporation
99 East C Street, #111
Upland, CA 91786

Dear Cory:

Please find enclosed the project summary for the Temescal Creek/Lee Lake Easement
Amphibian/Fish Recovery Project. The RCRCD is a not-for-profit special district formed under
Division 9 of the State of California Resources code in 1953. The district works on soil, water and
wildlife resources within its service boundaries on both private and public lands.

**Project Title:** Temescal Creek and Lee Lake Conservation Easement Amphibian and Fish
Recovery Project.

| | |
|---|---|
| **Managing Entity:** | Riverside-Corona Resource Conservation District (RCRCD) |
| **Project Manager:** | Kerwin Russell, Natural Resources Manager. |
| **District Manager:** | Shelli Lamb, lamb@rcrcd.com |
| **Mailing Address:** | 4500 Glenwood Dr, Bldg A, Riverside, CA 92501 |
| **Phone:** | 951-683-7691, ext 203 |
| **Email:** | russell@rcrcd.com |

**Projected Fund Amount:**   $100,000

**Project Summary:** Temescal Creek and its associated drainages make up the second largest
tributary to the 2,700 square mile Santa Ana River. Temescal Creek encompasses some 100,000
acres of wetland, riparian, upland, oak woodland and grasslands in the Temescal Canyon area of
Riverside County, CA. Temescal Creek begins at the outlet of Lake Elsinore, and flows northwest
into Temescal Canyon, a subsidence area of the Elsinore fault, with the Santa Ana Mountains and
the Cleveland National Forest to the west and the Gavilan Plateau and Lake Mathews to the east.
The project will occur in the RCRCD Lee Lake Conservation Easement
wetland/riparian area of the creek, seen in fig. 1.



**Figure 1.** Location of the RCRCD's Lee Lake Conservation Easement along Temescal Creek. The aerial photograph shows the approximate outline of the 30-acre easement in red and wetland areas in green. – Summer 2007.   The project will occur within the area of red.

The field portion of the project will target removal and control of non-native exotics, both flora such as giant reed, tamarisk and castor bean (which reduce native habitat and consume large amounts of water) and fauna such as red eared sliders, carp, catfish and other introduced fishes and amphibians that compete with native fish and amphibians for food and cover.  The Lee Lake pond and Temescal Creek that flows into it were once excavation ponds from sand and gravel mining operations.  The wetlands of the creek have been impacted by both non-native plants and animals and required ongoing control work and monitoring.  The work will target the three-acre pond and 2,000 linear feet of watercourse in the easement.

Work on the uplands and some weed control around the pond has been conducted, but funds were insufficient to continue the work into the areas proposed for this project.  Baseline funding to conduct some control work and monitoring for a period of no less than three years is proposed.

**Project Plan:**
The goals of this project are to 1) partially restore the hydrologic function of Temescal Creek through this portion of the easement, 2) reduce exotic weeds and fish/amphibian species, 3) monitor water quality of the pond through monthly water quality testing at various locations.  Deliverables of the project will be

  a.  A 95% reduction in exotic weeds and a 50% reduction in exotic aquatic species (ie: bullfrogs, crawdads, carp etc).
  b.  Partial restoration of the hydrologic functions of the creek though the removal of non-native vegetation and monitoring of native vegetation.
  c.  Water quality data tracking changes in water quality due to removal of non-native vegetation and improvement of water quality for aquatic species.

A monitoring report will also be created each year and a final report at the end of the project.  This work will also complement the removal and control work that has taken place the last two years in the Dos Lagos Easement just north of the project.  The project is expected to last for at least three years, or until all funds have been expended.

**Proposed Budget:**

| | |
|---|---|
| Year 1: | $25,000.  For exotic plant removal and control, purchase of monitoring equipment and supplies.  Installation of exclusionary fencing to reduce foot traffic and weed spread.  First annual report. |
| Year 2: | $20,000.  For exotic aquatic species removal and control, continued water monitoring, supplies and staff time.  Maintenance of exclusionary fencing and second annual report. |
| Year 3: | $20,000.  For additional removal, water monitoring and supplies.  Installation of signage for project and third annual report. |
| Year 4: | $20,000.  Continued control of exotics, monitoring and annual report. |
| Year 5: | $15,000.  Final annual report and as-needed exotics control.  Water monitoring. |

**Total Expenditures: $100,000**

The Riverside-Corona Resource Conservation District has reviewed the draft consent decrees and the matter of Inland Empire Waterkeeper, a Chapter of Orange County Coast Keeper vs. Food for Life Baking Company Corporation and Inland Empire Waterkeeper, a Chapter of Orange County Coast Keeper vs. Frontier Aluminum Corporation and will reviewed the final consent decree once entered by the court. The Riverside-Corona Resource Conservation District has agreed to accept $35,000 for Food for Life Baking Company and $65,000 from Frontier Aluminum Corporation as part of the settlement in the above referenced matter, and will use such funds for the Temescal Creek and Lee Lake Conservation Easement Amphibian and Fish Recovery Project as outlined in the SEP letter.

None of the funds provided through this settlement will be used for lobbing purposes. Furthermore, this agency will report to the Department of Justice on an annual basis describing the general nature of the work and how much was spent. If you have any questions about the project or would like to visit the project site, please do not hesitate to contact us.

Kerwin Russell
Natural Resources Manager
Riverside-Corona Resource Conservation District